Opinion
WOODS, J.
Introduction
The District Attorney of Los Angeles County charged appellant, by complaint, with two violations of the California Vehicle Code. Count 1 charged a violation of section 23152, subdivision (a) (driving under the influence of alcohol). Count 2 charged a violation of section 23152, subdivision (b) (driving with a .10 or more percent of blood alcohol). The jury trial began on November 6, 1986. The jury could not reach a verdict on count 1 but found appellant guilty on count 2. The court declared a mistrial on count 1. The court denied appellant’s motion for a new trial on November 21, 1986. Appellant filed her notice of appeal on December 11, 1986.
*Supp. 12 Factual Synopsis
On June 28, 1986, about 3:05 a.m., Officers Prisco and Heckel stopped a vehicle driven by appellant to conduct an investigation. Among other statements made by appellant, she told Officer Prisco that she had not eaten since 2:30 p.m. on the previous afternoon when she had eaten a hamburger. She also stated that she had started drinking at about 8:30 p.m. and had stopped drinking at 1:30 a.m. The officers arrested appellant and transported her to the Pico Rivera sheriff’s station for a breath test. Officer Heckel administered two breath tests to appellant at 3:30 a.m. The first test produced a reading of 0.10. The second test produced a reading of 0.11.
An expert criminalist, Warren Michael Best, testified that he had examined the records of the machine used to test appellant. He further testified that in his opinion the machine was accurate and properly functioning during the month of June 1986; that the machine detects the transfer of volatile compounds from the blood to the lungs; that one of these compounds can be ethyl alcohol; that deep lung air sampling allows determination of the person’s blood alcohol level; that test readings of .10 and .11 have a margin of error of plus or minus 10 percent; that the margin of error is a combined accuracy margin for the instrument and the subject providing the sample; that test results of .10 and . 11 would cause one to expect a blood alcohol level of between .09 and .121 percent at the time of testing; and that the blood-alcohol level would not change during the interval between the two tests.
From facts in evidence, a hypothetical question was addressed to witness Best, who responded as follows: “If a person had eaten only a hamburger at 2:30 p.m., and had consumed alcohol only between 8:00 p.m. and 1:30 a.m., that person would have a declining blood alcohol curve from its peak at 2:30 a.m.; that if a 118-pound female had a blood alcohol level of .10 or .11 at 3:30 a.m. and had not eaten since 2:30 p.m. and she drank in a normal drinking pattern between 8:00 p.m. and 1:30 a.m., there was a high degree of probability that she had a blood alcohol level of .11 to .12 at 3:00 a.m.”
Issue on Appeal
The sole issue on this appeal concerns the trial court’s refusal to give a requested jury instruction which the appellant offered as follows: “Proposed Jury Instructions [sic] HI] If the scientific evidence shows that the inherent inaccuracies of a chemical test show a margin of error that includes a range below .10 percent, then, as a matter of law, you are required to find the defendant not guilty as to count II. (People v. Campos (1982) 138 Cal.App.3d Supp. 1 [188 Cal.Rptr. 366].)”
*Supp. 13 Discussion
Appellant contends that our holding in People v. Campos, supra, 138 Cal.App.3d Supp. 1, mandates the giving of the above requested jury instruction and the trial court’s refusal to so give is reversible error as a matter of law. We do not agree with this contention. Campos involved a single blood-alcohol-content test result of .10 percent utilizing a blood sampling. The testing instrument in Campos, had an inherent inaccuracy of plus or minus .005 percent. In Campos, the expert criminologist testified that the reading could go as low as .095 percent and as high as .105 percent. This court reversed the conviction, indicating that it was reversible error for the trial judge to have instructed the jury that the appellant was presumed to have been driving under the influence of alcohol, based upon the facts as they existed in Campos.[1]
The Campos decision was correctly decided, since the underlying fact giving rise to the presumption must be proven beyond a reasonable doubt. (Evid. Code, § 607.)[2] It is doubtful that the underlying fact could have been proven in Campos with the required “civil” burden of proof, i.e., by a “preponderance of the evidence,” let alone with the criminal burden of proof.
Unlike Campos, the facts of this case indicate that the test results, repeated on two occasions, revealed readings of .10 and .11. The jury is bound to consider all of the evidence admitted but is not bound to accept or reject any of the evidence in making its decision.
Evidence Code section 312 provides: “Except as otherwise provided by law, where the trial is by jury: [jj] (a) All questions of fact are to be decided by the jury. [j[] (b) Subject to the control of the court, the jury is to determine the effect and value of the evidence addressed to it, including the credibility of witnesses and hearsay declarants.” In finding the defendant guilty of the charges in count 2, the jury could have rejected the .10 reading *Supp. 14 as lacking in credibility and could have accepted the .11 reading as the credible reading. Based upon the evidence before it, the . 11 reading would have yielded a probable test result range of .099 to .121 when considering the combined margin of error of plus or minus 10 percent. The expert testified that there was a high degree of probability that the appellant had a blood-alcohol level of .11 to .12 at 3 a.m.
Assuming an unbiased instrument and normal deviation, after random test sampling of the instrument to determine the margin of error inherent in a given instrument reading, both the median and mean between a range of .099 and .121, would be .110. The probability of the actual blood-alcohol level being .099 in this instance, based upon circumstantial evidence of an instrument reading of .11, is highly remote. As a matter of elementary probability theory, the probability of a .099 blood alcohol test result in this instance is one in twenty-three or only 4.35 percent.[3]
We discern that under the facts of this case there is substantial evidence in the record to warrant the trial court’s rejection of the appellant’s proposed jury instruction. The trial court properly instructed the jury in this case by including CALJIC Instruction No. 12.61.1 (1985) and CALJIC Instruction No. 16.000, parts V, X, and XI (1979 rev.).[4]
*Supp. 15 Unlike Campos, where the evidentiary record would bring into question whether or not the prosecution could even meet a civil burden of proof by “a preponderance of the evidence” when taking into consideration the instrument reading only, there is substantial evidence in this record that the People could and did meet the criminal burden of proof of “beyond a reasonable doubt” in this instance. Campos is distinguished and limited to the facts of that particular case. However, we are quick to point out that the holding in this case is not intended to establish a mathematical percentage figure in future similar cases by which the criminal burden of proof is deemed established. The figure of 4.35 percent, discussed ante, is not intended as a “benchmark” for similar future criminal prosecutions.
The judgment is affirmed.
Newman, Acting P. J., and Roberson, J., concurred.

The trial judge in Campos gave former CALJIC No. 16.834 (1979 rev.) which read as follows: “If the evidence establishes beyond a reasonable doubt that the amount, by weight, of alcohol in the defendant’s blood was one tenth of one percent (0.10%) or more at the time of the test as shown by a chemical analysis of his blood, breath, or urine, you should find that the defendant was under the influence of intoxicating liquor at the time of the alleged offense, unless from all the evidence you have a reasonable doubt that he was in fact under the influence of intoxicating liquor at the time of the alleged offense.”

 Section 607 provides as follows:
“When a presumption affecting the burden of proof operates in a criminal action to establish presumptively any fact that is essential to the defendant’s guilt, the presumption operates only if the facts that give rise to the presumption have been found or otherwise established beyond a reasonable doubt, and, in such case, the defendant need only raise a reasonable doubt as to the existence of the presumed fact.”

 On appeal we can and must take judicial notice facts and propositions of generalized knowledge that are so universally known that they cannot reasonably be the subject of dispute. (Evid. Code, §§ 451, subd. (f), 459.)

CALJIC Instruction No. 12.61.1 provides:
“CALJIC 12.61.1 (1985 Revision)
“Driving With 0.10 Percent or More—Presumption “(Vehicle Code, § 23152, subd. (b) and § 23153, subd. (b))
“If the evidence establishes beyond a reasonable doubt that (1) a sample of defendant’s blood, breath or urine was obtained within three hours after he operated a vehicle, and (2) that a chemical analysis of such sample established that there was 0.10 percent or more by weight of alcohol in the defendant’s blood at the time of the performance of the chemical test, then you may but are not required to infer that the defendant drove a vehicle with 0.10 percent or more by weight of alcohol in his blood at the time of the alleged offense.
“[The failure, if any, to follow the regulations adopted by the California State Department of Health for procedures to be used in administering tests to determine the concentration of alcohol in a person’s blood may be considered by you in determining the accuracy of the test or test results made in this case.]”
CALJIC Instruction No. 16.000, parts V, X, and XI, provide:
“V
“Sufficiency of Circumstantial Evidence
“A finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.
“Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant’s guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.
*Supp. 15 “Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant’s guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant’s innocence, and reject that interpretation which points to his guilt.”
“X
“Expert Testimony
“[In determining the weight to be given to the opinion of any expert who has testified in this case, you should consider the qualifications and credibility of such expert and the reasons given for his opinion.
“You are not bound to accept an expert opinion as conclusive, but should give to it the weight, if any, to which you find it to be entitled.]
“[If there was any conflict in the testimony of expert witnesses, you should consider their relative qualifications and credibility in weighing the opinion of one expert against that of another as well as the reasons given for each opinion and the facts upon which it was based.]”
“XI
“Presumption of Innocence and Burden of Proof “A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the State the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: [j|] It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.”